In Re the Welfare of B.E.N. a minor child.

**William Walter STEIN, Jr., Petitioner, Appellant,**

**v.**

**Catherine Louise TIMMONS, f.k.a. Catherine Louise Helmke, f.k.a. Catherine Louise Nyberg, Respondent.**

No. C9–86–253.

Court of Appeals of Minnesota.

Sept. 2, 1986.

William E. Sjoholm, Minneapolis, for appellant.

Kevin B. Spaeth, Grand Forks, N.D., for respondent.

Considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

William Walter Stein, Jr. appeals from a judgment granting respondent permanent legal and physical custody of their minor child subject to appellant's right of visitation, permitting respondent to remove the child from the state, and ordering appellant to pay child support. We affirm.

## FACTS

Respondent Catherine Louise Timmons gave birth to B.E.N. on December 18, 1979. Respondent was age sixteen and unmarried at the time. Both parties agree that appellant William Walter Stein, Jr. is the father. Appellant was age eighteen when the child was born.

The minor child, now age six, has lived with respondent since birth except during three months in 1981 when he lived in a foster home and approximately eight months in 1984 when he lived with appellant. In 1981, respondent experienced financial problems and apparently felt pressured from her boyfriend. When appellant refused to help her, she placed the child in foster care for three months. In May 1984, respondent's one and one-half year marriage to Randy Helmke was being dissolved, and she asked appellant to take the minor child. The minor child lived with appellant until December 1984, when respondent returned the child to her home in East Grand Forks.

In June 1984, appellant petitioned the court to grant him custody of the minor child. Respondent counter-petitioned for the court to order appellant to pay child support. The trial court declared appellant to be the father, granted respondent legal and physical custody subject to visitation rights, permitted respondent to move to West Germany with the child, and ordered appellant to pay $500 per month in child support.

In July 1984, respondent married Pat Timmons, who is stationed in West Germany for three years with the United States Air Force. Respondent currently resides in West Germany with the minor child and her husband. She does not work outside the home.

Appellant currently lives in Mason City, Iowa. He is age twenty-four and has never been married. Appellant owns and manages a Domino's Pizza franchise. During a seven-month period prior to trial, appellant had received $6,000 in dividends before tax-

es and $13,000 to $14,000 in salary after taxes.

## ISSUES

1. Did the trial court abuse its discretion in granting respondent custody of the minor child?

2. Did the trial court abuse its discretion in permitting respondent to remove the child from the state?

3. Did the trial court abuse its discretion in its visitation determination?

4. Did the trial court abuse its discretion in setting child support in the amount of $500 per month?

## ANALYSIS

1. Appellant argues that the trial court improperly granted respondent custody of the minor child. The determination of custody in a case in which paternity for a child born outside the marriage has been acknowledged and established is governed by the same criteria applicable in a dissolution action. *See* Minn.Stat. § 257.541, subd. 2(a) (1984).

Appellant concedes that the child was too young to express a preference for living with either parent. In such a case, *Pikula v. Pikula,* 374 N.W.2d 705 (Minn. 1985), requires that "custody be awarded to the primary parent absent a showing that that parent is unfit to be the custodian." *Id.* at 713. This court must affirm the trial court's decision unless the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Id.* at 710.

We hold the trial court did not abuse its discretion in awarding respondent custody of the child. The evidence supports the court's determination that respondent was the primary caretaker. The child is age six and has been in respondent's care since birth except for three months in foster care and eight months in appellant's care. The court considered the indicia of primary parenthood set forth in *Pikula,* and reasoned as follows:

[T]he fact that [respondent] may not always have performed all of [the tasks] properly and completely and that she may often have had the assistance of her parents, friends, and husband in caring for the child is immaterial. The law does not require that she be a "perfect" caretaker or that she be the "sole" caretaker, but only that she be the "primary" caretaker. The law is concerned with protecting and maintaining the bond which is established between a child and [its] primary caretaker. [There] is evidence of such a bond in this case and that fact corroborates the determination that respondent has been the primary caretaker.

Furthermore, the trial court did not clearly err in finding that respondent is fit to be the custodian of the minor child. Although there was testimony regarding respondent's lapses in the physical care provided to the child, the court took note of other pressures to which she was subject at those times. The court emphasized that respondent recognized her mistakes within a short time, that the placements of the child in foster care and with appellant were of relatively short duration, and that respondent had matured in her relationships with her child and her present husband so as to considerably lessen the risk that such incidents would occur in the future. The trial court concluded that it was in the best interest of the child to maintain the child's bond with its primary caretaker. *See* Minn.Stat. § 518.17, subd. 1 (1984). Because the trial court's findings regarding custody are supported by the evidence, we find no abuse of discretion in granting respondent custody of the minor child.

2. Appellant argues that the trial court erred in allowing respondent to remove the child from the state to live in West Germany. *See* Minn.Stat. § 518.175, subd. 3 (1984). The trial court may not deny removal under § 518.175, subd. 3 "simply because the move may require an adjustment in the existing pattern of visitation." *Auge v. Auge,* 334 N.W.2d 393, 397 (Minn.1983). The trial court reasoned that

respondent must not be prevented from joining her husband in West Germany while he is stationed there for the next three years. The court concluded that the best interest of the child requires that he be with respondent and that he therefore be allowed to accompany her to West Germany. We find no abuse of discretion in this determination.

3. Appellant next argues that the trial court erred by failing to grant appellant more definite visitation rights. *See* Minn. Stat. § 257.541, subd. 2(a). The trial court specified appellant's right to visitation as follows:

> [Appellant] has the right to visitation [privileges], visitation is in the best interest of the child, and it should be encouraged. Unfortunately, it appears that it will be difficult on a practical level for [appellant] to [exercise] the amount of visitation that is normally available to a non-custodial parent. * * * [Appellant's] [contact] with the child will almost necessarily be limited to letters and phone conversations together with the right to see the child when he is back in the States. It is in the child's best interests that respondent keep [appellant] continually advised of the child's address and phone number and that she assist the child in communicating with [appellant] by letter and by phone. When the child is in the States, he should be made available for extended visits with [appellant], and when he is of an age where he can safely travel alone, [appellant] should have the right to have the child spend up to a month of the summer vacation with him, with the parties sharing the transportation costs equally.

■ The father's right to visitation, if paternity has been acknowledged and established, is determined under Minn.Stat. § 518.175 (1984). *See* Minn.Stat. § 257.-541, subd. 2(a). Considering the difficulties inherent in the parties' living arrangements at this time, we believe that the trial court fashioned a visitation schedule that is in the best interest of the child. *See* Minn. Stat. § 518.175, subd. 1. The schedule al-

lows appellant to maintain a relationship with the child while he is living abroad by requiring respondent to continually inform appellant of any change of address. The schedule also provides for "extended visits" with appellant when the child is in the United States or when the child is at an age when he can travel alone. Although the trial court used the word "should" when referring to appellant's right to visitation, we interpret that in its mandatory sense. We believe that the court's order is sufficiently definitive considering the circumstances present at this time and that it properly follows Minn.Stat. § 518.175, subd. 1.

4. Appellant argues that the trial court erred in setting his child support obligation at $500 per month because of the expenses involved in visitation. A judgment determining the existence of a parent-child relationship must include a provision concerning the duty of support. *See* Minn.Stat. § 257.66, subd. 3 (1984). The trial court found that appellant's net income from wages and profit sharing for the seven months prior to trial was $13,000 to $14,000, plus approximately $6,000 in dividends. The court calculated appellant's net monthly income at approximately $2,700 less taxes on the dividends.

■ We find no abuse of discretion in the trial court's setting of child support at $500 per month, which is in accord with the guidelines, Minn.Stat. § 518.551, subd. 5 (1984). The court found that appellant has both the obligation and ability to pay child support. Appellant has never contributed financially to the support of the child except for eight months during 1984 when the child lived with him. The trial court was not required to reduce appellant's child support obligation to cover visitation expenses.

**DECISION**

The trial court did not abuse its discretion in granting respondent custody, permitting respondent to remove the child from the state, fashioning a visitation

schedule, and ordering appellant to pay child support of $500 per month.

Affirmed.